DECISION.
The defendant-appellant, Emory Green, appeals from the order of the trial court sentencing him to a term of twelve months in prison for possession of one gram of cocaine, a felony of the fifth degree. Although the trial court originally placed Green on community control, Green was found to have violated the court-imposed conditions by testing positive for drugs, resulting in the trial court revoking the community control and imposing the maximum prison sentence.
Green argues that the imposition of the maximum sentence was unsupported by the record or by the findings required by R.C.2929.14 (C). Specifically, Green argues that the trial court failed to mark any of the required findings under R.C. 2929.14(C), and that the court's statements concerning recidivism, as well as those concerning the circumstances of his arrest, were unsupported.
R.C. 2929.15(B) provides that if an offender violates the terms of his community control, the trial court may impose a prison term pursuant to R.C. 2929.14. Under R.C. 2929.14(B), an offender who has not previously served a prison term must be given the minimum term unless the trial court finds that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public. The trial court made both of these findings, and they are not the subject of Green's appeal. In order to give Green the maximum sentence, however, the court had to have made additional findings under R.C 2929.14(C) that he either committed the worst form of the offense, was the type of offender who posed the "greatest" likelihood of committing future crimes, was a major drug offender, or was a repeat violent offender. State v. Delaney (Aug. 20, 1999), Hamilton App. No. C-981017, unreported.
The trial court left blank on its sentencing checklist all these factors. Clearly there is no basis in the record to support a finding that Green committed the worst form of the offense or was either a repeat violent offender or a major drug offender. Consequently, the only possible basis for imposing the maximum sentence was that Green posed the "greatest" risk of recidivism. Such finding can be inferred from the fact that the court did check off all of the specifically enumerated "recidivism likely" factors under R.C. 2929.12(D): (1) that Green was under a type of control, (2) that he had prior delinquency adjudications or criminal convictions, (3) that probation or parole had been previously unsuccessful, (4) that he had an unacknowledged substance-abuse pattern, and (5) that he showed no remorse. In order to sustain this inference, however, we must examine whether the record supports the court's finding that all these factors were present.
Green challenges the first of these findings — that he was under a type of control — by pointing out that the statutory criterion that this language attempts to paraphrase requires that the offender be under a type of control at the time of the offense for which he was originally sentenced — in other words, at the time Green was caught in possession of the cocaine. We agree that this is what the statute says and find no evidence to support such a finding. Parenthetically, we note also that this was the only finding the court made under R.C. 2929.13(B)(1)(a) through (h); thus, by challenging the sufficiency of this finding, Green has standing to appeal the prison term imposed for a fifth-degree felony. See State v. Flahive (1998), 127 Ohio App.3d 32,711 N.E.2d 746; State v. Shryock (Aug. 1, 1997), Hamilton App. No. C-961111, unreported.
Green does not challenge the second finding — that he had previous delinquency adjudications. In fact, as Green concedes (and as the presentence-investigation report demonstrates), he has had "numerous" delinquency adjudications for aggravated burglary, assaults, and multiple drug and alcohol offenses.
With regard to the third finding — unsuccessful probation or parole — Green argues that, before the revocation of his community control, he did not have any previous unsuccessful experiences with probation. The statutory factor referenced by the checklist, found at R.C. 2929.12(D)(3), refers to the offender not "respond[ing] favorably to sanctions previously imposed for criminal convictions." In Green's view, this means only sanctions "previously imposed for [previous] criminal convictions." This is not, however, the language of the statute. Green's argument is largely semantic, furthermore, because R.C. 2929.12(D) allowed the court to consider, in addition to the statutory factors, "any other relevant factors" indicating that Green was likely commit future crimes. The court was free to consider, therefore, Green's failure to abide by his present community-control conditions as an indicator of recidivism, even if R.C. 2929.12(D)(3) referred only to previously imposed sanctions for previous convictions.
Green challenges further the court's finding that he refused to acknowledge a pattern of drug abuse, or that he refused treatment for that abuse. In this regard, Green points to the fact that he pleaded guilty to the possession of cocaine and agreed to the terms of his community control requiring him to undergo drug testing. But pleading guilty to a single act of possession and having community control conditioned upon involuntary drug testing is not the same thing as acknowledging a pattern of drug abuse and seeking treatment.
We do note, however, that Green's attorney, in speaking on behalf of his client before the revocation hearing, stated that Green had admitted to him that drug abuse had been a problem since the time he was twelve years old, a period of six years. Green's attorney stated, "It's pretty clear, Judge, I believe that he does have a — drug problem. He has a — and he was pretty open to me about that." Green's attorney also expressly requested the court "to consider treatment for this man." Green, when given the opportunity to speak to the court, said that his immediate goal was to re-enroll in the "ADAPT program." (This program, however, is nowhere described in the record.) Furthermore, Green's probation officer, in the presentence-investigation report, stated the following:
 The defendant has admittedly been smoking marijuana on a daily basis since age 13. He indicated that he has tried crack cocaine two times and information furnished by the Pre-Trial Services indicates that he first used crack at age 12 and continues to smoke crack less than one time per week. When asked how much he spends on drugs, the defendant indicated that he is given marijuana by family and friends. The defendant indicated that he was due to begin outpatient treatment at Talbert House on 9-9-99.
 On the other hand, for reasons that are unclear given the above excerpt, the presentence-investigation report lists an "[u]nacknowledged substance abuse pattern" among the possible sentencing factors. And the court, in sentencing Green, stated, "We had tried treatment, he turned in dirty every time, was recommended and opted out."
There is nothing further in the record concerning this issue. Without more, we conclude that the record does not support a finding that Green failed to acknowledge his pattern of drug abuse. As for his refusing treatment, we find a conflict between the statements of Green and his attorney that he desired treatment, and the court's statement that "[w]e had tried treatment, [and] he turned in dirty every time." While the court was obviously referring to prior contacts with Green, there is no evidence placed before us to support the court's statement: the presentence-investigation report is completely silent on any previous attempts at treatment. Although the court was apparently speaking from personal familiarity with Green, that does not satisfy the requirement that there must be evidence placed on the record to support the court's findings. Thus, we conclude that the record does not support a finding that Green refused treatment for drug or alcohol abuse.
Green next argues that there is nothing in the record to support the trial court's conclusion that he demonstrated no remorse. We disagree. In his statement to the court, Green described himself as a product of his environment. He denied his guilt, however, stating, "I know the seriousness of the offenses [sic] for which I've been charged. Although I'm not guilty, I realized I put myself in this predicament." Given the tenor of these comments, which seem to deflect rather than to accept blame, we hold that the court, which was in the better position to judge Green's demeanor and sincerity, had a sufficient basis to find a lack of remorse.
Finally, Green argues that the trial court imposed the maximum sentence because he was involved in some sort of altercation with his probation officer at the time of his arrest, but that the record is devoid of details concerning what actually occurred. At the sentencing hearing, Green's probation officer testified, "Your Honor, we had four probation officers who had to be involved in the arrest. All four of them could have — have been injured seriously, and luckily were able to subdue the probationer while being arrested. We were quite concerned at his behavior in the Probation Department." Green's attorney then stated, "Judge, there was no injury, though, and I think that this can be explained, in part. He's asthmatic and he also is 18. He's quite young. The — notwithstanding that, Judge, it's not to excuse the behavior, we would request the Court to consider this treatment."
The court rejected treatment, citing Green's "behavior" and expressing its view that Green posed a "danger to the public." We conclude that there was sufficient evidence of record to support the court's findings, and that Green's behavior at the time of his arrest was among the relevant factors that the trial court could consider under the catch-all provision of R.C. 2929.12(D).
In sum, we hold that there was evidence to support the court's checked "recidivism likely" factors of (1) a history of prior delinquency adjudications, (2) a history of unsuccessful probation (i.e., community control), and (3) no remorse. We hold however, that the record does not support the findings that he was on probation at the time of the original offense, or that he has failed to acknowledge a pattern of drug abuse or refused treatment. Given the trial court's failure to make an express finding that Green posed the "greatest" risk of recidivism, and because two of the "recidivism likely" factors that were checked are not supported by the record, we conclude that the sentence is contrary to law. Consequently, the court's sentence is vacated and this cause is remanded for resentencing.
Sentence Vacated and Cause Remanded.
DOAN, P.J., GORMAN and SUNDERMANN, JJ.